**Ralph SACHS, Plaintiff,**

v.

**CITY OF DETROIT, a municipal corporation, Defendant.**

No. 02–71889.

United States District Court,
E.D. Michigan,
Southern Division.

March 13, 2003.

Robert H. Golden, Armand D. Kunz, Golden & Kunz, Lathtup Village, for Ralph Sachs, Plaintiff.

Edward V. Keelean, Detroit City Law Department, Detroit, for City of Detroit, Defendant.

### OPINION AND ORDER

ZATKOFF, Chief Judge.

## I. INTRODUCTION

This matter is before the Court on (1) Defendant's Motion for Summary Judgment; (2) Plaintiff's Motion for Leave to File Response of More Than 20 pages; and (3) Plaintiff's Motion for Partial Summary Judgment. Plaintiff has responded to Defendant's Motion and the Defendant has responded to Plaintiff's Motion for Partial Summary Judgment. The Court finds that the facts and legal arguments are adequately presented in the parties' briefs and the decisional process would not be significantly aided by oral argument. Therefore, pursuant to E.D.MICH.LR 7.1(c)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Leave to File Response of More Than 20 Pages is GRANTED, and Plaintiff's Motion for Partial Summary Judgment is DENIED.

## II. BACKGROUND

### A. Factual History

This dispute arises out of the City of Detroit's demolition of eight properties pursuant to Ordinance No. 290–H of the Detroit Municipal Code. Plaintiff had either purchased these properties outright at tax sales from the State of Michigan,[1] or

---

1. The five properties Plaintiff purchased at State of Michigan Department of Natural Re-

sources tax sales are all located in Detroit and have the following street addresses: (1) 7640

bought them on land contract from the City of Detroit.[2] The background facts relating to each of the eight properties are described below.

### 1. Properties Acquired on Land Contract

#### a. 5710 Proctor

On November 23, 1987, Plaintiff entered into a land contract with the City of Detroit to purchase the property located at 5710 Proctor for the sum of $5,200.00. Plaintiff made seven payments, but made no payments after March 1990. On September 14, 1995, the City of Detroit sent Plaintiff a Notice of Intent to Forfeit (Terminate the land contract), due to failure to make payments for seven properties then under land contract with Plaintiff, one of these properties being 5710 Proctor. On October 10, 1995, the City of Detroit sent Plaintiff a Forfeiture Notice advising Plaintiff that due to failure to make payments, his rights under the 5710 Proctor land contract had been forfeited. On December 5, 2000, the City of Detroit inspected the property and found it to be dangerous building, vacant, and open to trespass. On January 5, 2001, the City sent Plaintiff a "Dangerous Building Violation Notice and Notice of Hearing," advising Plaintiff of the City's findings and notifying Plaintiff of a Hearing that was to take place on the matter on January 19, 2001. This Notice was sent by certified mail and received by Plaintiff on January 10, 2001. On February 8, 2002, Plaintiff requested a deferral of a demolition order, On February 12, 2001, the City Council approved demolition, and on April 16, 2001, the City demolished the structures on the property at a cost of $36,099.00. At the time of the demolition, the City of Detroit was the record owner of the property. On August 13, 2001, the City of Detroit sent Plaintiff another Notice of Intent to Forfeit.

#### b. 7437–43 Joy Road

On June 26, 1989, Plaintiff entered into a land contract to purchase property from the City of Detroit located at 7437–43 Joy Road for the sum of $7,100.00. Plaintiff made no payments on the land contract after March 1990. On September 12, 1995, the City inspected the property and found the property to be vacant, vandalized, and open to trespass. On September 14, 1995, the City of Detroit sent Plaintiff a Notice of Intent to Forfeit (Terminate the land contract), due to failure to make payments for seven properties then under land contract with Plaintiff, one of these properties being 7437–43 Joy Road. On October 10, 1995, the City of Detroit sent Plaintiff a Forfeiture Notice advising Plaintiff that due to failure to make payments, his rights under the 7437–43 Joy Road land contract had been forfeited. On October 7, 1999, the Detroit Building and Safety Engineering Department asked the City to demolish the property because it was considered vacant. The City demolished the property on April 6, 2000, at a cost of $11,295.82. At the time of the demolition, the City of Detroit was the record owner of the property.

#### c. 12731 Robson

On October 4, 1989, Plaintiff entered into a land contract to purchase property from the City of Detroit located at 12731 Robson for the sum of $3,100.00. Plaintiff made no payments on the land contract

---

Miller Road; (2) 10237–51 Linwood; (3) 5015 McDougal Street; (4) 3857–9 W. Warren; and (5) 10122 Puritan.

**2.** The three properties Plaintiff contracted to purchase on land contract from the City of Detroit are all located in Detroit and have the following street addresses: (1) 5710 Proctor; (2) 7437–43 Joy Road; and (3) 12731 Robson.

after March 1990. On June 20, 1990, and October 4, 1990, the City inspected the property and found the property to be vacant, vandalized, and open to trespass. On July 18, 1990, and December 12, 1990, the Buildings and Safety Engineering Department recommended that the property be demolished. On September 14, 1995, the City of Detroit sent Plaintiff a Notice of Intent to Forfeit (Terminate the land contract), due to failure to make payments for seven properties then under land contract with Plaintiff, one of these properties being 12731 Robson. On October 10, 1995, the City of Detroit sent Plaintiff a Forfeiture Notice advising Plaintiff that due to failure to make payments, his rights under the 12731 Robson land contract had been forfeited. On July 21, 1999, the Detroit Building and Safety Engineering Department asked the City to demolish the property because it was considered vacant. The City demolished the property on October 12, 2000, at a cost of $6,517.72. At the time of the demolition, the City of Detroit was the record owner of the property.

### 2. Properties Acquired at Tax Sales

#### a. *7640 Miller Road*

On November 29, 1995, the City Buildings and Safety Engineering Department inspected the property located at 7640 Miller Road and had found the property to be vacant and open to trespass. On January 25, 1996, and Building and Engineering Department recommended to the City Council that the property be demolished. On January 26, 1996, the City of Detroit filed a Notice of Lis Pendens with the Wayne County Register of Deeds, although it is unclear from the face of the document when it was recorded. Notice of these proceedings were sent to the record owner at the time, the State of Michigan Department of Natural Resources. On March 17, 1997, the property was again inspected, and again found to be vacant

and open to trespass. On April 4, 1997, the Building and Engineering Department again recommended to City Council that the property be demolished, and on May 2, 1997, the City ordered the property to be demolished.

On February 4, 1998, Plaintiff purchased the property located at 7640 Miller Road from the State of Michigan Department of Natural Resources at a tax sale. At the time Plaintiff purchased the property, the Department of Natural Resources provided him with notice that the property was potentially subject to a demolition order issued by the City of Detroit, (which it was), and advised him to immediately present a copy of his purchase certificate to the City and request a deferral of demolition. Plaintiff did not request a deferral of the demolition order. *See* Plaintiff's Response Brief, Ex. 2. On April 14, 1998, just over two months after Plaintiff purchased the property, and pursuant to the city's demolition order, the property was demolished at a cost of $6,782.97.

#### b. 10237–51 Linwood

On September 22, 1994, the Buildings and Safety Engineering Department inspected the property located at 10237–51 Linwood and found the property to be a dangerous building within the definition of Ordinance No. 290–H and thereafter commenced demolition proceedings. On November 7, 1994, the Department filed a Notice of Lis Pendens regarding the demolition proceedings with the Wayne County Register of Deeds, which was recorded on December 16, 1994. On November 23, 1994, the Department recommended to the City Council that the building be demolished, notice of the Department's findings was sent to the record owner of the property, and a hearing was scheduled for December 20, 1994. On

January 13, 1995, the City ordered the property be demolished.

On May 18, 1999, Plaintiff acquired the property at a State of Michigan Department of Natural Resources tax sale. At the time Plaintiff purchased the property, the Department of Natural Resources provided him with notice that the property was potentially subject to a demolition order issued by the City of Detroit, (which it was), and advised him to immediately present a copy of his purchase certificate to the City and request a deferral of demolition. Plaintiff did not request a deferral of demolition. *See* Plaintiff's Response Brief, Ex. 2. Pursuant to the City's demolition order, the property was demolished on July 19, 1999, at a cost of $37,323.30.

### c. 5015 McDougal Street

On October 20, 1998, Plaintiff purchased the property located at 5015 McDougal Street at a State of Michigan Department of Natural Resources tax sale for $300.00. In 2000, the City began receiving complaints regarding the condition of the property. On October 25, 2000, the City Buildings and Safety Engineering Department inspected the property and found it to be a dangerous building, vacant, and open to trespass. The Department notified Plaintiff that a departmental hearing would take place on the matter on December 5, 2000. On December 5, 2000, the City held a hearing on the matter and Plaintiff's attorney at the time attended. Plaintiff's attorney claimed the property was being rented out, but presented no rental agreement or other evidence to so indicate. On January 8, 2001, the City Council ordered that the property be demolished. On January 19, 2001, Plaintiff's architect, Nathan L. Harvey, submitted an incomplete application for deferral of the demolition order. On February 12, 2001, Plaintiff requested reinspection of the property and submitted a completed application for deferral. No deferral was granted. On February 19, 2001, pursuant to the demolition order, the property was demolished at a cost of $9,385.72.

### d. 3857 W. Warren

On February 25, 1997, the City of Detroit Buildings and Safety Engineering Department inspected the property located at 3857 W. Warren and found the property to be dangerous within the meaning of Ordinance No. 290–H. On March 13, 1997, the Department recommended to the City Council that the building be demolished. Notice of the recommendation was sent to the owner of record. On March 25, 1997, a hearing was held on the matter and the City of Detroit entered a demolition order on April 10, 1997.

On June 2, 1998, Plaintiff purchased the property at a State of Michigan Department of Natural Resources tax sale for $500.00. At the time Plaintiff purchased the property, the Department of Natural Resources provided him with notice that the property was potentially subject to a demolition order issued by the City of Detroit, (which it was), and advised him to immediately present a copy of his purchase certificate to the City and request a deferral of demolition. Plaintiff requested a deferral of the demolition order. The City granted reinspection which took place on July 14, 1998, but reinspection found that the property was extensively fire damaged and still open to trespass. On August 5, 1998, the City notified Plaintiff of these findings. On August 6, 1998, because of the danger posed by the property, the Buildings and Engineering Department requested the Department of Public Works to take emergency measures and immediately demolish the property. Pursuant to this request, the property was demolished on October 1, 1998, at a cost of $8,226.42.

### e. 10122 Puritan

Demolition proceedings on the 10122 Puritan property commenced in 1997 after a

complaint was filed regarding the property on January 31, 1997. On April 4, 1997, the City of Detroit Buildings and Safety Engineering Department inspected the property and found the property to be vacant, open to trespass, and vandalized. On June 4, 1997, the Buildings Safety and Engineering Department recommended to the City Council that the building on the property be demolished, and on June 5, 1997, filed a Notice of Lis Pendens regarding the demolition proceedings with the Wayne County Register of Deeds. The Notice of Lis Pendens, however, wasn't recorded until November 18, 1998. As a result of the April 4, 1997, inspection, a hearing was scheduled for June 17, 1997, whereat the owner of the property was presented the opportunity to show cause as to why the building should not be demolished. The owner did not attend the hearing, and on July 10, 1997, the City ordered the property to be demolished.

On October 29, 1997, Plaintiff obtained the property at a tax sale from the State of Michigan Department of Natural Resources for $300.00. At the time Plaintiff purchased the property, the Department of Natural Resources provided him with notice that the property was potentially subject to a demolition order issued by the City of Detroit, (which it was), and advised him to immediately present a copy of his purchase certificate to the City and request a deferral of demolition. Plaintiff did not request a deferral of demolition. Pursuant to the City's demolition order, the property was demolished on September 15, 1998, at a cost of $3,758.25.

### B. The Parties' Claims and Arguments

The following Counts of Plaintiff's amended complaint remain before the Court:

Count X: 42 U.S.C. § 1983–Destruction of Plaintiff's Property Without Proper Notice and Hearing; and

Count XI: 42 U.S.C. § 1983—Violation of Plaintiff's Procedural Due Process Rights.

In addition, the following count of Defendant's counterclaim remains before the Court:

Count I: Claim for Demolition Costs on All Property.

With Count X of the amended complaint, Plaintiff claims that the City of Detroit has a policy of demolishing owners' properties without notice or a hearing, and without just compensation in violation of property owners' due process rights, and that this policy caused injury to the Plaintiff in violation of 42 U.S.C. § 1983. With Count XI of the amended complaint, Plaintiff claims that Ordinance No. 290–H of the Detroit Municipal Code is unconstitutional (1) because it fails to provide property owners whose property is subject to demolition notice of the basis for the demolition, (i.e., the defect in the building warranting demolition), which deprives owners of a meaningful opportunity to be heard, (2) because the City of Detroit has a policy of disregarding the hearings requirement and demolishing property in violation of Ordinance No. 290–H; and (3) because although Ordinance No. 290–H contains a method to apply for a deferral of demolition, there is no requirement that the owner be notified of the granting or denial of the deferral application, and there is no requirement that the applicant be granted a hearing in the event of a denial of the application.

With Count I of its counterclaim, Defendant seeks judgment against the Plaintiff for the costs of demolishing the buildings on eight of Plaintiff's properties, and a lien against those properties for that amount.[3]

---

**3.** Defendant seeks a judgment and lien on the

eight subject properties in the following

### 1. Plaintiff's Motion for Partial Summary Judgment

With Plaintiff's Motion for Partial Summary Judgment, Plaintiff seeks judgment establishing Defendant's liability on Count X of Plaintiff's amended complaint as to the three properties Plaintiff contracted to purchase on land contract from the City of Detroit.[4] *See* Plaintiff's Motion for Partial Summary Judgment, p. 3. The basis of Plaintiff's Motion for Partial Summary Judgment is fairly straightforward. Plaintiff argues that Ordinance No. 290–H of the City of Detroit is unconstitutional because it provides that notice of the possible demolition of a dangerous building, *see* DETROIT, MICH., CODE Ord. No. 290–H § 12–11–28.4, or of a vacant building, *see* DETROIT, MICH., CODE Ord. No. 290–H § 12–11–10.1, is to be sent to the "owner or owners of record," but does not require that notice of the possible demolition of a dangerous or vacant building be provided to other interested parties, such as mortgagees, lien-holders, or land contract vendees. Plaintiff argues that this failure to provide notice deprives interested parties other than owners of record, of a fair hearing in violation of the due process clause and equal protection clause. Since Plaintiff was a land contract vendee on the three properties purchased on land contract, Plaintiff argues, his procedural due process rights have been violated.

In response, Defendant argues that Plaintiff's Motion for Partial Summary Judgment fails for three reasons. First, Plaintiff cannot establish a deprivation of due process because he had no property interest in the three properties under land contract. Second, Plaintiff's 42 U.S.C. § 1983 claim is not "ripe" for adjudication because Plaintiff has failed to exhaust state remedies. And third, with respect to the five properties not bought on land contract, Plaintiff, as an experienced businessman, should be charged with constructive notice that properties bought at tax sales and that are in a dilapidated condition are at an elevated risk of demolition by the City.

### 2. Defendant's Motion for Summary Judgment

With Defendant's Motion for Summary Judgment, Defendant argues that it is entitled to judgment on Plaintiff's 42 U.S.C. § 1983 claims because (1) as to those properties Plaintiff contracted to purchase on land contract from the City of Detroit, as soon as Plaintiff allowed these land contracts to go into forfeiture, Plaintiff lost his interest in the properties, and, therefore, there can be no constitutional deprivation; (2) for those properties where demolition orders were entered prior to Plaintiff having obtained an ownership interest, Plaintiff was not deprived of due process because at the time of the demolition proceedings he was not entitled to notice of those proceedings since he had not yet acquired an interest in the properties; (3) for those properties where the City had recorded Notices of Lis Pendens, Plaintiff was on record notice of the possibility of demolition; and (4) Plaintiff has not exhausted his state remedies.

In response, Plaintiff (1) collaterally attacks the Forfeiture Notices on the properties purchased on land contract; (2) collaterally attacks the determinations by the City of Detroit that certain properties

amounts: (1) 7640 Miller Road$6,782.97; (2) 3857 W. Warren$8,226.42; (3) 10122 Puritan$3,758.25; (4) 10237–51 Linwood$37,323.30; (5) 5710 Proctor$36,912.00; (6) 5015 McDougal Street$9,385.72 (7) 12731 Robson$6,517.72; and (8) 7437–43 Joy Road$11,295.82.

4. These three properties are located at: (1) 5710 Proctor; (2) 7437–43 Joy Road; and (3) 12731 Robson.

were dangerous, vacant, and open to trespass; (3) challenges the Defendant's reliance upon the Notices of Lis Pendens; and (4) with regards to the property located at 10122 Puritan, Plaintiff challenges the Defendant's assertion that Plaintiff did not request a deferral of demolition.

### III. LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to judgment as a matter of law. *See* FED. R.CIV.P.56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct.

2548. The non-moving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Philip Morris Co.,* 8 F.3d 335, 339–40 (6th Cir.1993).

■ A motion for partial summary judgment seeks judgment on part of a claim or defense and is evaluated under the same standard as described above. *See* 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 56.40[2] (3d ed.2000).

### IV. ANALYSIS

**A. Count X: 42 U.S.C. § 1983–Destruction of Plaintiff's Property Without Proper Notice and Hearing**

■ With Count X of Plaintiff's amended complaint, Plaintiff claims that the City of Detroit has a policy of demolishing owners' property without notice or a hearing, and without just compensation in violation of the due process rights of property owners, and that this policy caused injury to the Plaintiff in violation of 42 U.S.C. § 1983. In the context of municipal liability, a § 1983 cause of action arises when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible for under § 1983." *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipal policy exists where rules are intended to "establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. Cincinnati,* 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

In order to satisfy the requirements of municipal liability as established in *Monell,* Plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir.1993) (quoting *Coogan v. City of Wixom,* 820 F.2d 170, 176 (6th Cir.1987)).

■ Plaintiff claims that a policy or custom that has led to the constitutional deprivation of Plaintiff's due process rights is the Defendant's alleged policy of violating Ordinance No. 290–H by ignoring the Ordinance's hearings requirement. Plaintiff, however, has set forth no evidence to demonstrate that the Defendant has ever not held hearings when required by the Ordinance. In contrast, the Defendant has submitted extensive records to illustrate the time-consuming procedures the City went through in order to issue each of the demolition orders for the properties in question. Therefore, and because Plaintiff has set forth no evidence to support his contention that the Defendant does not hold hearings as required by Ordinance No. 290–H, Plaintiff's claim that the Defendant has a policy of ignoring the hearings requirement, brought pursuant to 42 U.S.C. § 1983, must fail.

■ Plaintiff also claims that the Defendant has demolished his property without compensation. *See* Plaintiff's Amended Complaint, p. 15. The Court construes this claim as a "takings" claim, alleging that Defendant has taken Plaintiff's property without just compensation in violation of the Fifth and Fourteenth Amendments. "A claim that a government regulation constitutes a taking of property in violation of the fifth amendment[,however,] will not be ripe for adjudication 'until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.'" *Seguin v.*

*City of Sterling Heights,* 968 F.2d 584, 587 (6th Cir.1992) (quoting *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)). If a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until he has used the procedure and been denied just compensation. *See Williamson,* 473 U.S. at 193 & 197, 105 S.Ct. 3108 (rejecting taking claim because plaintiff had not shown that the inverse condemnation procedure was unavailable or inadequate, and holding that until plaintiff utilized that procedure, its taking claim was premature). Without having sought compensation from the state, a plaintiff's case is not yet "ripe" because "the State's action ... is not 'complete' until the State fails to provide adequate compensation for the taking." *Id.*

Detroit Ordinance No. 290–H provides for an appeals process that states that "[a]ny person aggrieved by a decision of any city agency as pertains to [Ordinance No. 290–H] may request a hearing with the director of the agency or his or her designee; the agency receiving such a request shall conduct a hearing and issue a written report and decision on any matter to be heard." *See* DETROIT, MICH., CODE Ord. No. 290–H § 12–11–46.8 Appeals. Furthermore, "[i]n Michigan, the doctrine of inverse condemnation is long recognized and constitutionally established." *Macene v. MJW, Inc.,* 951 F.2d 700, 704 (6th Cir. 1991). *See* MICH. CONST., art. 10, § 2, "Michigan courts have held that inverse condemnation is a remedy for a taking and that a 'taking' of private property for public use is not restricted to cases involving absolute conversion of private property, but also includes cases where the value of the property is destroyed by the action of the government or where the owner is excluded from the use or enjoyment of his

property.'" *Macene,* 951 F.2d at 704. *See also Prewitt v. City of Rochester Hills,* 105 F.Supp.2d 724, 727–28 (E.D.Mich., 2000).

█ In the present case, Plaintiff raised his federal takings claim for the first time in state court in his amended complaint, which was then promptly removed to this Court. There has been no indication that Plaintiff followed through with the appeals process as set forth by section 12–11–46.8, or that Plaintiff has previously brought a state inverse condemnation claim. Accordingly, since Plaintiff has not availed himself of the Michigan inverse condemnation procedures, or demonstrated to the Court the inadequacy of those procedures, Plaintiff's "takings" claim is not yet "ripe." Defendant's Motion for Summary Judgment must be GRANTED with respect to this issue, and Plaintiff's takings claim is DISMISSED WITHOUT PREJUDICE.[5]

In summary, with respect to Count X of Plaintiff's amended complaint, Defendant's Motion for Summary Judgment must be GRANTED. To the extent Count X of Plaintiff's amended complaint claims a violation of 42 U.S.C. § 1983 based upon an alleged policy of ignoring the hearings requirement of Ordinance No. 290–H, Count X is DISMISSED WITH PREJUDICE. To the extent Count X of Plaintiff's amended complaint alleges a taking of Plaintiff's property without just compensation, Count X is DISMISSED WITHOUT PREJUDICE. Plaintiff must first seek redress from the state itself.

**B. Count XI: 42 U.S.C. § 1983—Violation of Plaintiff's Procedural Due Process Rights.**

With Count XI of Plaintiff's amended complaint, Plaintiff alleges a violation of his procedural due process rights on three grounds: (1) Plaintiff claims Ordinance No. 290–H fails to provide property owners whose property is subject to demolition notice of the basis for the demolition, (i.e., the defect in the building warranting demolition), which deprives owners of a meaningful opportunity to be heard, (2) Plaintiff claims the Defendant has a policy of disregarding the hearings requirement and demolishing property in violation of Ordinance No. 290–H;[6] and (3) Plaintiff claims Ordinance No. 290–H is unconstitutional because although it contains a method to apply for a deferral of demolition, there is no requirement that the owner be notified of the granting or denial of a deferral application, and there is no requirement that the applicant be granted a hearing in the event of a denial of the application. *See* Plaintiff's Amended Complaint, pp. 16–17.

█ To establish a procedural due process claim under 42 U.S.C. § 1983, a Plaintiff must establish three elements: (1) that they have a constitutionally protected life, liberty, or property interest; (2) that they were deprived of this interest within the meaning of the due process clause; and (3) that the state did not afford them adequate procedural rights prior to depriving them of that protected interest. *See*

---

**5.** In addition, the Court notes that the City's actions under Ordinance No. 290–H are done pursuant to the City's police powers, as opposed to an exercise of eminent domain. It is well established that destruction of property pursuant to the proper exercise of a government's police power, (i.e., destruction of property for the public good), does not require the payment of compensation. *See Chicago B & Q Railway v. State of Illinois, ex rel. Grim-*

*wood,* 200 U.S. 561, 26 S.Ct. 341, 50 L.Ed. 596 (1906).

**6.** This argument, however, has already been disposed of by the Court, as set forth in Part IV.A. of the Court's Opinion and Order. The Court, therefore, will only address arguments (1) and (3) of Count XI of Plaintiff's Amended Complaint.

*Hahn v. Star Bank,* 190 F.3d 708, 716 (6th Cir.1999). With respect to the five properties Plaintiff purchased from the State of Michigan at tax sales,[7] it is uncontested that Plaintiff had constitutionally protected property interests in those properties, and that the Defendant's demolition of the buildings on those properties constituted a deprivation of those interests. Plaintiff's argument challenges the constitutionality of the procedures the Defendant afforded Plaintiff before it deprived him of those interests.

The standard under which this Court is to evaluate the constitutionality of a particular procedure was set forth by the Sixth Circuit in *Moore v. Board of Education of the Johnson City Schools,* 134 F.3d 781, 785 (6th Cir.1998)(quoting *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)):

> The traditional standard for the constitutionality of a particular procedure focuses on three factors:
> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Moore,* 134 F.3d at 785.

The Court finds that both of Plaintiff's arguments fail under the above standard. While the Court recognizes the magnitude of the interest a property owner has in avoiding the demolition of his or her property, the Court finds that after considering the procedures already in place, the two requirements Plaintiff seeks to impose upon the procedures would serve little value and would impose burdensome administrative requirements.

To begin with, the Court notes that Ordinance No. 290–H already defines a "dangerous" or "vacant" building. These definitions provide City inspectors, and property owners, the standards to determine whether a subject property is either "dangerous" or "vacant" and thereby subject to possible demolition. *See* DETROIT, MICH., CODE Ord. No.290–H §§ 12–11–28.2 & 12–11–46.3(a)–(c).

In addition, with respect to "dangerous" buildings, the City commences demolition proceedings only after an inspection of the property has revealed the property to be in a "dangerous or unsafe condition." *See* DETROIT, MICH., CODE Ord. No. 290–H § 12–11–28.4. After commencing demolition proceedings, the owner of the property is then provided with the opportunity to be heard prior to the agency making its recommendation of demolition, (if that is the recommendation), to the City Council. The findings of this hearing are sent to the last known address of the owner, and to the City Council, which, pursuant to § 12–11–28.4 of Ordinance No. 290–H, must then conduct another hearing, whereat the owner, (or other interested party), may again contest the agency's findings and recommendation of demolition. *See* DETROIT, MICH., CODE Ord. No. 290–H § 12–11–28.4. A similar procedure is followed with respect to demolition orders issued for vacant, as opposed to dangerous, buildings. *See* DETROIT, MICH., CODE Ord. No. 290–H §§ 12–11–46.3 & 12–11–46.4. Afterwards, the owner, or any other person aggrieved by the agency's decision, may then appeal the demolition order. *See* DETROIT, MICH., CODE Ord. No. 290–H § 12–11–46.8. Therefore, throughout these proceedings, and prior to demolition, an owner has several opportunities to determine the basis of the

---

7. *See supra* note 1.

original findings and to contest those findings. For these reasons, the Court finds the procedures set forth by Ordinance No. 290–H to be constitutionally adequate.

With respect to the five properties Plaintiff purchased at State of Michigan Department of Natural Resources tax sales, Defendant's Motion for Summary Judgment must be GRANTED on this issue.

### C. Plaintiff's Motion for Partial Summary Judgment

In his Motion for Partial Summary Judgment, Plaintiff argues, for the first time, that Ordinance No. 290–H unconstitutionally deprives those with an interest in property other than an ownership interest of procedural due process because Ordinance No. 290–H only provides notice of demolition proceedings to the "owner or owners of record." *See* DETROIT, MICH., CODE Ord. No. 290–H §§ 12–11–28.4 & 12–11–46.4. Plaintiff raises this argument with respect to the three properties he contracted to purchase on land contract from the City of Detroit.[8]

As stated above, the first element the Plaintiff must establish to set forth a procedural due process claim under 42 U.S.C. § 1983 is to demonstrate that he has a constitutionally protected life, liberty, or property interest. *See Hahn*, 190 F.3d 708 at 716. "Property interests[, however,] are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In Michigan, with respect to vacant land, or land that can be recovered peacefully, a land contract vendee's interest in property may be severed at the time of forfeiture without resort to summary proceedings.

*See Day v. Lacchia*, 175 Mich.App. 363, 437 N.W.2d 400, 404 (1989) ("[W]here the purchaser is not in physical possession of the land or possession can be recovered peaceably, as is frequently true where the property is vacant, the purchaser's rights may be declared forfeited by the seller without proceedings in court if notice of forfeiture is duly given.").

In the present case, Defendant sent to Plaintiff a Notice of Intent to Forfeit and a Forfeiture Notice for failure to make payments on each of the three properties of the instant litigation that Plaintiff purchased on land contract. There is no indication that Plaintiff responded to these notices. After forfeiture, a City inspection found each of these properties to be vacant and open to trespass. *See* Defendant's Brief in Support of Motion for Summary Judgment, Vol. 2, Ex. A.J., Affidavit of Fred Rottach ¶ 9; Vol. 2, Ex. B.J., Affidavit of Fred Rottach ¶ 9; Vol. 2, Ex. C.K., Affidavit of Fred Rottach, ¶ 9. Therefore, under Michigan law, Plaintiff had no constitutionally protected property interest in the subject properties, and Plaintiff's procedural due process claim must fail. Accordingly, Plaintiff's Motion for Partial Summary Judgment must be DENIED, and Defendant's Motion for Summary Judgment as to these three properties must be GRANTED.

### D. Defendant's Counterclaim

Up until now, the Court has exercised supplemental jurisdiction over Count 1 of Defendant's state-law counterclaim based upon 28 U.S.C. § 1367. Although § 1367 does confer supplemental jurisdiction upon the Court, thus allowing the Court to hear Defendant's state-law claim, the Court may decline to exercise jurisdiction over the claim if "the district court has dismissed all claims over which it

---

**8.** *See supra* note 2.

has original jurisdiction." 28 U.S.C. § 1367(c)(3). Though it is not necessary to dismiss the state law claim after all of the federal law claims have been dismissed, *see Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254 (6th Cir.1996), the Court should consider factors such as "judicial economy, convenience, fairness, and comity," when deciding whether to decline to exercise supplemental jurisdiction over the remaining state law claim. *See id.* (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)).

In the present case, there are ongoing parallel state court proceedings on Plaintiff's state law claims and Counts II–IV of Defendant's counterclaim. It is clear from the supplemental exhibits submitted by the Defendant, however, that despite this Court having retained jurisdiction over Count I of Defendant's counterclaim, the parties have been proceeding in state court on Count I of Defendant's counterclaim. *See, e.g.,* Defendant's Supplemental Exhibits, Ex. 1 & 2. Accordingly, the Court finds that there is no reason for it to exercise jurisdiction over Defendant's remaining state-law claim. Although this Court is familiar with the procedural history of this case, and has knowledge of its underlying facts, the state courts involved can just as easily, if they have not already done so, become as familiar and knowledgeable. Indeed, a state court presumably has greater expertise with state law than a federal court. *See Tafflin v. Levitt*, 493 U.S. 455, 456, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990). Therefore, the Court shall decline to exercise subject matter jurisdiction over Count I of Defendant's counterclaim. Count I of Defendant's counterclaim shall be REMANDED to the Wayne County Circuit Court.

## V. CONCLUSION

Accordingly, and for the reasons set forth above, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is GRANTED. To the extent Count X of Plaintiff's amended complaint claims a violation of 42 U.S.C. § 1983 based upon an alleged policy of ignoring the hearings requirement of Ordinance No. 290–H, Count X is DISMISSED WITH PREJUDICE. To the extent Count X of Plaintiff's amended complaint alleges a taking of Plaintiff's property without just compensation, Count X is DISMISSED WITHOUT PREJUDICE. Furthermore, Count XI of Plaintiff's amended complaint is DISMISSED WITH PREJUDICE. Plaintiff's Motion for Partial Summary Judgment is DENIED. Lastly, Count I of Defendant's counterclaim is REMANDED to Wayne County Circuit Court.

IT IS SO ORDERED.

## JUDGMENT

IT IS ORDERED AND ADJUDGED that pursuant to this Court's Opinion and Order dated 13 MAR 2003, this cause of action is DISMISSED. Count X and Count XI of Plaintiff's Amended Complaint, but only to the extent Count X claims a violation of 42 U.S.C. § 1983 based upon an alleged policy of ignoring the hearing requirement of Ordinance 290–H, are DISMISSED WITH PREJUDICE. To the extent Count X of Plaintiff's Amended Complaint alleges a taking of Plaintiff's property without just compensation, Count X is DISMISSED WITHOUT PREJUDICE. Lastly, Count I of Defendant's Counterelaim is REMANDED to Wayne County Circuit Court.