DAY v LACCHIA

Docket No. 103852. Submitted October 18, 1988, at Lansing. Decided
    February 23, 1989.

Plaintiffs, Arthur and Joyce Day, brought an action in the
    Ingham Circuit Court against defendants, Joseph and Shirley
    Lacchia, and Glenn Wilbur, alleging that defendants had un-
    lawfully dispossessed them of real property. The property was
    first sold by a land contract in 1967 from Gilbert and Mabel
    Van Peenen to Allan and Sue Ann Cooper. Following their
    divorce, Allan Cooper quitclaimed his interest to Sue Ann
    Cooper, who then assigned her purchaser's interest to Barry
    Day. Arthur Day, Barry Day's father, then arranged for the
    Lacchias to assume the balance due on the Van Peenen-Cooper
    contract in return for a seller's interest in a land contract
    selling the property to Arthur and Joyce Day. The contract was
    for the principal amount of $14,500 payable with zero dollars
    down and monthly payments of $130 at the rate of nine
    percent per annum. The contract provided that the entire
    amount due was to be paid by May 10, 1985, and that the Days
    were to make certain repairs. The Days began renting out the
    property and its deterioration continued. On March 22, 1979, a
    city building inspector notified Arthur Day of thirty separate
    substandard conditions. In December, 1979, the Days sold the
    property on land contract to Delores McKinney for $26,500.
    The Days, as sellers, were contractually responsible for making
    numerous repairs. In 1980, the Days filed a complaint in
    district court seeking to recover possession. While the suit was
    pending, McKinney moved out and rented the property to a
    succession of tenants, the last moving out in November, 1982.
    In May, 1983, a judgment was entered declaring McKinney in

REFERENCES

Am Jur 2d, Vendor and Purchaser §§ 355, 406 *et seq.*, 580 *et seq.*,
    604.

Necessity and reasonableness of vendor's notice to vendee of requi-
    site time of performance of real-estate sales contract after prior
    waiver or extension of original time of performance. 32 ALR4th
    8.

Modern status of defaulting vendee's right to recover contractual
    payments withheld by vendor as forfeited. 4 ALR4th 993.

breach of contract and allowing her until August 9, 1983, to cure the breach or forfeit her contract rights. McKinney did not redeem the property. The property remained vacant and continued deteriorating. The Days failed to make their April, May and June, 1983, land contract payments, or pay taxes and insurance as required by the land contract. On July 8, 1983, the Lacchias sent notice to the Days citing the failure to make payments and repairs as constituting a default under the land contract. The notice warned that the contract rights of the Days would be forfeited if they did not cure their default within fifteen days. When the Days failed to make the past-due payments, Joseph Lacchia changed the locks and posted a sign indicating that he had retaken possession on July 28, 1983. On August 2, 1983, the Lacchias and Glenn Wilbur executed a buy-sell agreement contingent on the clarification of the Days' interest in the property. On October 5, 1983, the Lacchias and Wilbur executed a land contract. From September, 1983, to October, 1984, Wilbur cleaned, repaired, and extensively refurbished the house, expending 1,777 hours of labor and materials valued at $7,588. On March 7, 1984, the Days brought the instant action. In September or November, 1984, plaintiffs' attorney deposited $3,031.92 in an escrow account with the court clerk for back payments, taxes and interest from April, 1983, to September, 1984. On November 6, 1984, the Lacchias paid the balance on their contract with the Van Peenens, and received a warranty deed which was recorded the following day. Following a bench trial, the trial court, Peter D. Houk, J., found that the Days had an equitable interest in the property which was not extinguished in August, 1983. However, the court declared that the Days would be unjustly enriched if allowed to recover the property without paying for the improvements by Wilbur. The Days were given ninety days to cure their default and redeem their interest by paying $34,255 (the $25,200 value of the improvements plus the $23,287 contract balance due, minus the fair rental value of $11,200 and the $3,032 previously deposited by the Days). To determine fair rental value, the court determined that there was no rental value until Wilbur began occupying the property in October, 1984, and then its value was $350 for each of the following thirty-two months. The Days appealed.

The Court of Appeals *held:*

1. In certain circumstances, the self-help remedy is still available and land contract vendors need not necessarily resort to the statutory summary proceedings act. The peaceable retak-

ing of vacant property, such as in this case, is such a circumstance.

2. The trial court had the power to relieve the Days from the forfeiture. It was not error to condition redemption upon the payment of the entire past due balance under the land contract and the price of the improvements made on the property.

3. The Days were not entitled to rental payments for the period of time that the house was uninhabitable and in disrepair due to their own fault.

4. Although the Days may have retained a legal right to redeem the property from forfeiture, they had no right to possession due to their abandonment of the property. They were not entitled to damages for the alleged interference with their possessory interest.

Affirmed.

1. VENDOR AND PURCHASER — LAND CONTRACTS — FORFEITURE — SELF-HELP.

A land contract purchaser's rights may be declared forfeited by the seller without proceedings in court if notice of the forfeiture is duly given where the purchaser is not in physical possession of the land or possession can be recovered peaceably, as is frequently true when the property is vacant; a court of equity may relieve the defaulting purchaser from the forfeiture and compel specific performance by the seller when in the court's judgment to do otherwise would result in an unreasonable forfeiture.

2. VENDOR AND PURCHASER — LAND CONTRACTS — FORFEITURE — REDEMPTION.

A land contract purchaser has ninety days following a judgment entitling the seller to possession within which to redeem the property; the remedy provided by summary proceedings is in addition to, and not exclusive of, other remedies, either legal, equitable or statutory (MCL 600.5744, 600.5750; MSA 27A.5744, 27A.5750).

3. VENDOR AND PURCHASER — LAND CONTRACTS — FORFEITURE — REDEMPTION — ACCELERATED INDEBTEDNESS.

Monies required to be paid to redeem property from forfeiture after breach of a land contract cannot include any accelerated indebtedness by reason of the contract breach (MCL 600.5726; MSA 27A.5726).

4. VENDOR AND PURCHASER — LAND CONTRACTS — FORFEITURE — RIGHT TO POSSESSION.

A land contract purchaser who retains a legal right to redeem

the property from forfeiture has no right to possession of the property where he has previously abandoned it.

*C. Richard Taber,* for plaintiffs.

*John F. Mertz,* for defendants.

Before: MICHAEL J. KELLY, P.J., and MacKENZIE and S. B. MILLER,* JJ.

S. B. MILLER, J. Plaintiffs, Arthur and Joyce Day, appeal as of right from a judgment entered in favor of defendants, Joseph and Shirley Lacchia, and Glenn Wilbur. Plaintiffs had filed a complaint which alleged that defendants had unlawfully dispossessed them of real property. We affirm.

The property in question was first sold by a land contract in 1967. The holders of legal title, Gilbert and Mabel Van Peenen, entered into a contract to sell the property to Allan and Sue Ann Cooper, husband and wife, for $13,300. Following their divorce, Allan Cooper quitclaimed his interest in the property to Sue Ann Cooper. Sue Ann Cooper remarried and under her new name, Sue Ann Cooper Ferguson, assigned her purchaser's interest in the land contract to Barry Day, a married man.

Barry Day's father, Arthur Day, then contacted the Lacchias to see if they would be interested in holding a land contract on the property if a land contract buyer could be found. The Lacchias expressed an interest in the property and a closing was conducted. The end result of the transactions was that the Lacchias assumed the balance due on the Van Peenen-Cooper contract in return for a seller's interest in a land contract selling the property to Arthur and Joyce Day for the principal amount of $14,500 payable with zero dollars

---

* Circuit judge, sitting on the Court of Appeals by assignment.

down and the balance payable at the rate of $130 per month including interest at the rate of nine percent per annum. The contract provided that the entire amount due under the contract was to be paid by May 10, 1985, and further provided that the Days, as purchasers, were to make necessary repairs to the exterior trim on the house by September, 1978.

The Days painted and made some minor repairs and then began renting out the property. The property, which was not in the best condition when it belonged to the Coopers, deteriorated further while occupied by the Days' tenants. A building inspector from the City of Lansing inspected the property on March 22, 1979, and notified Arthur Day of thirty separate substandard conditions. The substandard conditions ranged from wiring to broken windows.

Sometime in the fall of 1979, Dolores McKinney began renting the house. In December, 1979, Arthur and Joyce Day sold the property on land contract to Dolores McKinney for $26,500. The Days, as sellers, were contractually responsible for making numerous repairs. In 1980, the Days filed a complaint to recover possession of the premises in district court. While the suit was pending, Dolores McKinney moved out and began renting the property to a succession of tenants. The last tenant moved out sometime around November, 1982. In May, 1983, a judgment was entered declaring that Ms. McKinney owed $4,189 on the McKinney-Day land contract through the April, 1983, payment and allowing her until August 9, 1983, to cure the breach or forfeit her rights under the contract. The judgment further provided that if Ms. McKinney redeemed the property, the Days were to repair the upstairs plumbing and the roof over the back porch in accordance with the land

contract. Ms. McKinney was unable to redeem the property within the ninety-day period.

In the meantime the property stood vacant. Despite violation notices from the City of Lansing Department of Building Safety, Mr. Day did not make the needed repairs, maintaining he was not entitled to possession of the property.

The Days failed to make their land contract payments due on April 10, May 10 and June 10, and had not paid taxes and insurance on the property as required by the terms of the land contract. On July 8, 1983, the Lacchias sent notice to the Days citing their failure to make these payments and the property's condition of disrepair as constituting a default under the contract. The notice warned the Days that if they did not cure the default within fifteen days their contract rights would be forfeited. When the Days failed to make the past-due payments, Joseph Lacchia went onto the property on July 28, 1983, changed the locks and posted a sign indicating that he had retaken possession.

In the early part of July, 1983, defendant Glenn M. Wilbur was introduced to Mr. Lacchia as someone interested in purchasing the property. On August 2, 1983, the Lacchias and Wilbur executed a buy-sell agreement contingent on the clarification of the Days' interest in the property. On October 5, 1983, the Lacchias and Wilbur executed a land contract. Wilbur purchased the property for $13,500. Paragraph 3(k) of the contract read as follows:

> This land contract is a second land contract and is subject to the terms of a first land contract dated November 30, 1967 by and between Gilbert Van Peenen and Mabel Van Peenen, husband and wife, as Seller, and Allan L. Cooper and Sue Anne

Cooper, husband and wife, as Purchaser, which contract was signed by Purchaser on April 21, 1978 to Bary [sic] Day, a married man, and by him on May 10, 1978 to Joseph F. Lacchia and Shirley E. Lacchia, husband and wife, Seller herein. The interest of Seller herein was previously sold by land contract on May 10, 1978 to Arthur Day and Joyce Day, husband and wife. Said Purchaser subsequently sold their interest on land contract to Dolores McKinney. The Day/McKinney contract has been forfeited by judicial decree in Ingham County Circuit Court File No. 80-25254-CH. The Lacchia/Day contract has been forfeited by Notice of Forfeiture served on July 8, 1983. Seller herein agrees to indemnify Purchaser against any claim of right, color or title by either Arthur and Joyce Day and/or Dolores McKinney arising from said contracts.

Pursuant to an escrow agreement dated August 5, 1983, the closing documents and funds were held in escrow until August 12, 1983, to allow time to resolve the matter of the Days' interest in the property. Wilbur testified that the August 12 date was selected because it allowed Mr. Day a few days within which to redeem the property. Likewise, Joseph Lacchia testified that they waited until August 12 to give Mr. Day one last chance to produce the money owing on the Lacchia-Day land contract. The Lacchias and Wilbur further agreed that the Lacchias would pay the legal costs associated with defending against the Days' interest in the property.

On August 13, 1983, a neighbor observed Mr. Day on the property and alerted Wilbur. When Wilbur arrived he found Mr. Day taking the window out of the front storm door to gain entry to the house. He informed Mr. Day that he had purchased the property and asked him to leave. Mr. Day then left the property peacefully.

Starting in September, 1983, and continuing until October, 1984, Glenn Wilbur cleaned, repaired, and extensively refurbished the house.

Wilbur moved into the house in October, 1984. He estimated that he had invested a total of 1,777 hours of labor and materials valued at $7,588 in refurbishing the house. He estimated that half of the labor and materials were spent on repairs and bringing the house into compliance with building codes, and the other half was spent upgrading the house. He valued his labor at $10 per hour.

At trial, Arthur Day testified that after being told on August 13, 1983, that Wilbur had purchased the property he sought legal assistance. However, it was not until March 7, 1984, that the Days filed their complaint in Ingham Circuit Court. Count I alleged that the Lacchias had never lawfully extinguished their rights as land contract purchasers of the property as required by statute. Count II alleged that the Days had been unlawfully dispossessed of the premises and, pursuant to MCL 600.2918; MSA 27A.2918, they were entitled to three times the fair rental value of the property from August 10, 1983, until possession was restored to them. Defendants Lacchias and Wilbur counterclaimed alleging that both the land contract and Michigan law allowed them to retake possession of the property in the face of the waste which plaintiffs had allowed the property to suffer, coupled with the fact that the property stood vacant and the plaintiffs had failed to pay the monthly payments. Defendants sought the court's declaration that the plaintiffs' interest in the property was extinguished.

Sometime in September or November, 1984, plaintiffs' attorney deposited with the Ingham Circuit Court Clerk, on plaintiffs' behalf, a check in

the amount of $3,031.92. The check was tendered as the back payments due under the land contract. The amount was computed by adding to the $130 per month principal and interest payment $38.34 per month for taxes, and multiplying this sum by eighteen to cover the months from April, 1983, to September, 1984.

On November 6, 1984, the Lacchias paid the balance owing on their underlying contract with the Van Peenens and received a warranty deed dated November 6, 1984, which was recorded the following day. A bench trial was conducted in May, 1987. At the close of the trial, the court found that defendant Wilbur had improved the property by investing $7,500 in materials and $17,700 worth of labor. Although the court found that the Days had an equitable interest in the property which was not extinguished in August, 1983, the court declared that the Days would be unjustly enriched if they were allowed to recover the property without paying for the extensive improvements made by Mr. Wilbur. Balancing the equities, the trial court allowed the Days ninety days to redeem their interest in the property by paying the Lacchias $34,255. This figure was arrived at by adding the $25,200 value of the improvements to the contract balance then due of $23,287 to arrive at a total of $48,487. From this amount the court subtracted the fair rental value of the property, determined to be $11,200, and the $3,032 previously deposited with the court. (To compute a fair rental value of the property, the court first determined that the property had no rental value until Mr. Wilbur began occupying the premises in October of 1984. The court then determined the fair rental value to be $350 per month. Multiplying $350 by thirty-two months, the court arrived at $11,200.) The Days were given ninety

days in which to cure the default. Plaintiffs appeal as of right from this judgment.

On appeal we address whether or not the plaintiffs retained an equitable interest in the property which entitled them to an opportunity to redeem. We first note that in an equity action the decision of a trial court is reviewed de novo. The entire record is examined, all the evidence is weighed and the trial court's findings are subjected to close scrutiny. A trial court's decision in an equity action will not be reversed unless its findings are clearly erroneous or the reviewing court is convinced that it would have reached a different result. *McDonald Ford Sales, Inc v Ford Motor Co,* 165 Mich App 321, 325; 418 NW2d 716 (1987).

Plaintiffs contend that to recover possession of property from a defaulting land contract vendee, the vendor must either commence foreclosure proceedings in circuit court or follow the statutory procedure for regaining possession through summary proceedings in district court. The plaintiffs maintain that they were dispossessed of the property without resort to either of these judicial proceedings and thus the dispossession was unlawful. However, we find plaintiffs' argument to be erroneous.

In *Rothenberg v Follman,* 19 Mich App 383, 387-389; 172 NW2d 845 (1969), lv den 383 Mich 770 (1970), this Court stated:

> The estate of a land contract purchaser does not (in contrast with a mortgage) include as one of its incidents an equity of redemption. This means that a land contract seller need not invoke a judicial or statutorily created remedy to foreclose the rights of the purchaser as must a mortgagee if he wishes to foreclose the mortgagor's equity of redemption. Typically, the seller will find it necessary to institute summary proceedings or an ac-

tion for ejectment or an equitable action to foreclose the purchaser's interest so that he can obtain peaceable possession. *But where the purchaser is not in physical possession of the land or possession can be recovered peaceably, as is frequently true where the property is vacant, the purchaser's rights may be declared forfeited by the seller without proceedings in court if notice of forfeiture is duly given.*

Nevertheless, a court of equity has the power to relieve the defaulting purchaser from the forfeiture and to compel specific performance by the seller when in the court's judgment to do otherwise would result in an unreasonable forfeiture. Whether a particular forfeiture is unreasonable depends upon a number of factors, among them the amount and length of the default, the amount of the forfeiture (i.e., the sum of the amounts paid to the seller and the value of the property at the time of forfeiture less the contract price), the reason for the delay in payment and the speed with which equity's aid was sought. [Emphasis added.]

Although the statutory provisions then in effect for summary proceedings to recover possession of land were replaced by the present statutory provisions with the enactment of 1972 PA 120, the new act did not change the existing law with respect to a land contract purchaser's right to redeem following the institution of summary proceedings. Former MCL 600.5673; MSA 27A.5673 provided that a land contract purchaser was allowed a minimum of ninety days following a judgment entitling the plaintiff to possession within which to redeem the property in the same manner as provided by current MCL 600.5744; MSA 27A.5744. Furthermore, MCL 600.5750; MSA 27A.5750 specifically provides that the remedy provided by summary proceedings is "in addition to, and not exclusive of, other remedies, either legal, equitable or statutory."

Similarly, in *Emmons v Easter,* 62 Mich App 226; 233 NW2d 239 (1975), this Court, citing *Rothenberg,* held that the former statute did not abrogate a land contract vendor's common-law right of self-help repossession provided the repossession could be peacefully accomplished.

It may be assumed that when 1972 PA 120 was enacted the Legislature was aware of the construction this Court placed upon the former statute. In the absence of specific language to the contrary, we assume that the Legislature intended that the substantially similar redemption provisions of the new act be construed in the same manner as before. *Smith v Detroit,* 388 Mich 637, 650-651; 202 NW2d 300 (1972).

Plaintiffs place much reliance on *Gruskin v Fisher,* 405 Mich 51; 273 NW2d 893 (1979), and argue that *Gruskin* requires use of the summary proceedings act to declare a forfeiture. We do not read *Gruskin* that broadly. The issue before the Court was extremely narrow, that of election of remedy. The Court did not specifically address the continued viability of the self-help remedy and, thus, we hold that in certain circumstances self help is still available and land contract vendors need not necessarily resort to the summary proceedings act. The peaceable retaking of vacant property, such as in this case, is such a circumstance.

Defendants concede, and we agree, that the trial court had the power to relieve plaintiffs from the forfeiture pursuant to *Rothenberg, supra.* The proceedings were equitable in nature; indeed, both plaintiffs and defendants requested equitable relief. Plaintiffs now argue that it was erroneous for the trial court to condition redemption upon the payment of the entire balance due under the land contract and to add to the contract balance the

price of improvements made on the property. Plaintiffs also maintain that the court should have allowed them credit for the fair rental value of the property for the entire time defendant Wilbur was in possession.

We first note that pursuant to MCL 600.5726; MSA 27A.5726 monies required to be paid to redeem the contract property cannot include any accelerated indebtedness by reason of the contract breach. However, in the instant case, the contract terms provided that the entire balance was due on May 10, 1985, prior to entry of the trial court's judgment. Therefore, the trial court's judgment did not operate to accelerate the contract balance but merely ordered payment of the past due amount under the terms of the contract.

As to plaintiffs' claim that they were entitled to rental payments for the entire period defendant Wilbur was in possession, we find it untenable. At the time defendant Wilbur began making improvements on the property it was virtually uninhabitable. As previously stated, the housing department found over thirty code violations at the property. The trial court found that the property had become uninhabitable and in disrepair due to the fault of plaintiffs. We agree with the trial court that plaintiffs should not benefit from their own wrongdoing.

Lastly, we address plaintiffs' contention that the trial court erred in failing to award damages pursuant to MCL 600.2918(1); MSA 27A.2918(1) for the unlawful interference with plaintiffs' possessory interest in the property. The flaw in plaintiffs' argument is that, although they may have retained a legal right to redeem the property from forfeiture, they had no right to possession. *Durda v Chembar Development Corp*, 95 Mich App 706; 291 NW2d 179 (1980), lv den 409 Mich 927 (1980). The

property had long been abandoned when the Lacchias took possession on July 28, 1983. There were
no damages suffered by the Days and the trial
court properly did not award any.

Affirmed.