*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT BRIGGS,

        Plaintiff-Appellee,

v

VANESSA MASON and RICHARD SALMI,

        Defendants-Appellants.

UNPUBLISHED
January 19, 2023

No. 357863
Houghton Circuit Court
LC No. 21-017597-AV

Before: RIORDAN, P.J., and MARKEY and REDFORD, JJ.

PER CURIAM.

Defendants, Vanessa Mason and Richard Salmi, appeal by leave granted the circuit court's opinion and order affirming a judgment of possession entered by the district court under the summary proceedings act (SPA), MCL 600.5701 *et seq*., in favor of Robert Briggs, who had purchased the real property at issue, a house, from Daniel Small by land contract. As part of the SPA litigation, the district court denied motions for summary disposition, for relief from judgment, and for determination of an interest in land that were all filed by defendants, who started renting the property under a lease with Small, now deceased, a few years after the land contract was executed. Facing eviction, defendants filed this appeal. We reverse and remand for a trial in the district court to determine whether Briggs abandoned the land contract.

## I. BACKGROUND

On September 1, 2011, Small and Briggs entered into a land contract. Small agreed to sell his house to Briggs for $28,000 plus interest. Under the land contract, Briggs was required to make monthly payments of $200 for 72 months, culminating in a balloon payment for the remaining balance. Briggs also agreed to maintain insurance on the property and to pay the real estate taxes. Upon full payment of the land contract, Small was required to convey legal title to the house to Briggs pursuant to a general warranty deed. The land contract was recorded with the Houghton County Register of Deeds (register of deeds).

On September 29, 2014, Small entered into a rental agreement with defendants. Under the contract, Small rented the house—previously sold to Briggs by land contract—to defendants. The rental agreement contained the following provisions:

> After one year, assuming all things are in accordance, the landlord [Small] agrees to sell said property to either or both tenants for the price of $28,000.00 less all monies accumulated from rent and deposit for one year ($3,900.00) for a sum total price of $24,100.00 at same percent (%) landlord is being charged on his current mortgage (currently 4.9%).
>
> * * *
>
> Landlord will pay all taxes and insurance on property.

On September 21, 2020, Briggs served defendants with a demand for possession of the property for nonpayment of rent. The demand indicated that defendants owed $2,206.99 in rent. On November 10, 2020, Briggs filed his SPA complaint in the district court against defendants seeking possession of the house. The complaint alleged that defendants owed $2,206.99 for back taxes. A copy of the Small-to-Briggs land contract was attached to the complaint.

Defendants moved for summary disposition under MCR 2.116(C)(8), claiming that Small had died intestate in February 2018[1] and that Briggs did not own the property. Defendants noted that on September 21, 2020, they had filed with the register of deeds an affidavit of interest in land relative to the property. Defendants maintained that there was no evidence that Briggs had paid the 72 monthly installments required by his land contract or that Briggs had a deed for the house titled in his name. Briggs filed a response to the motion and claimed ownership and a right to possession under the land contract.

On December 9, 2020, the district court held a hearing on Briggs's complaint for possession and defendants' motion for summary disposition. The district court asked Briggs to tell the court about the case. Briggs informed the district court that he, as vendee, had a land contract with Small covering the property. Briggs indicated that the land contract was executed in 2011 and was recorded with the register of deeds that same year. Documentary evidence supports these claims. In 2012, after his wife became terminally ill, Briggs spoke with Small about Briggs's renting out the house. They reached an agreement that Small's son would live at the property, that in exchange, the land contract payments, the taxes, and the insurance "would be [considered] paid," and that Briggs could not charge Small's son "any more than that." Briggs was unsure whether Small or Small's son would pay the taxes and insurance. Briggs claimed that he and Small reduced this agreement to writing. According to Briggs, the written agreement was in storage, and he had been going through boxes trying to locate it. Briggs stated that the agreement had not been filed with the register of deeds.

Further, in 2018, Briggs received a delinquent tax bill for the property. He called the Houghton County Treasurer (county treasurer), who purportedly informed him that there was a payment arrangement for the delinquent taxes which would take the property out of foreclosure. But Briggs then received another delinquency notice from the county treasurer. When he called the county treasurer, he was told that the delinquent taxes had to be paid by August 31, 2020, to prevent the property's foreclosure. Briggs asserted that he paid the delinquent taxes. He learned

---

[1] The record contains a death certificate showing that Small died on February 22, 2018.

from Calumet Township that defendants were living in the house. Briggs claimed that he tried numerous times to contact defendants because he had no knowledge that they had been living in the house. He indicated that he had never been informed that Small's son no longer lived at the house. Briggs stated that at one point defendant Mason told Briggs that she owned the house. When defendants did not contact Briggs after he demanded possession of the property for nonpayment, Briggs sued for possession in the district court.

Briggs informed the district court that he did not have any contact with Small after 2013 and that he had no knowledge that Small had died in 2018 or that Small had entered into a rental agreement with defendants. According to Briggs, he never forfeited his land contract, and Small had never instituted any land contract forfeiture proceedings against him.

Defendant Mason testified that she had lived in the house since 2014 when she and defendant Salmi entered into the rental agreement with Small. Mason stated that defendants had to clean the house when they moved in because it was in "total disarray." She opined that the home appeared abandoned. Mason was told that the house had been vacant for two years. She was also informed that Briggs had a land contract for the property but that he had "just up and disappeared." Mason asserted that she had heard that Briggs's son could not locate Briggs and that the police were looking for him. According to Mason, she had no reason to believe in 2014 that Small did not own the house. Mason claimed that Small told her that he owned it. She had not gone to the register of deeds to do a title search. Mason testified that about a month after she and Salmi moved into the house, Small gave her a copy of his warranty deed for the property, which revealed his purchase and ownership of the house.

Mason testified that she had never been late in making a monthly rental payment.[2] Since 2014, she had paid approximately $20,000. She had also spent approximately $21,000 in repairing the property. Mason posited that she had regular contact with Small and learned about his death from Small's girlfriend. But Mason has not been in contact with Small's heirs.

Mason testified that the accumulation of unpaid taxes in 2018 was the result of Small's death. When Mason learned of the delinquent taxes, she made arrangements to pay them, but defendants were unable to pay them as arranged. Mason asserted that she currently had the financial resources to maintain the property going forward. Mason admitted that "up until recently" the rental agreement had not been recorded with the register of deeds. The rental agreement was attached to an affidavit of interest in land that defendants had filed with the register of deeds.

Defendants asked the district court to summarily dismiss Briggs's complaint. Defendants argued that because Briggs did not have a warranty deed giving him title to the property, he was not the owner of the house. Rather, the owner of the property was Small's estate. Defendants contended that the matter had to be "sort[ed] out" in probate court with respect to which individual

---

[2] We note that although Briggs served a notice of nonpayment of rent on defendants and filed a complaint against them for nonpayment of property taxes, the case shifted away from a "nonpayment" dispute to one that focused solely on who had the right to possess the property.

or individuals now owned the property before there could be a determination of who had the right to possess the property. Briggs responded that he, and not defendants, had a land contract demonstrating a right of possession.

The district court found that although the case was "a God awful mess," it was not legally complicated. According to the district court, Briggs was within his rights to demand possession of the property. The district court explained that Briggs had a land contract for the property that was recorded with the register of deeds and that remained valid. The district court observed that Small had never instituted legal proceedings to have the land contract forfeited. And Briggs, as the land contract vendee, had equitable title to the property and all the rights associated with that title. The district court stated that Briggs could pursue obtaining legal title and a warranty deed from Small's estate. The district court opined that defendants' rental agreement, because it was not notarized, could not technically be recorded with the register of deeds. The district court also took the position that Small had no authority to enter into the rental agreement with defendants in 2014 because he did not have the right to occupy the home at the time; he only held legal title to the property. Ruling from the bench, the district court denied defendants' motion for summary disposition and gave them 60 days to vacate the property.

On December 9, 2020, the district court entered a possession judgment in favor of Briggs, recognizing his right to recover possession of the property.[3] The judgment authorized Briggs to apply for an order of eviction or writ of restitution if defendants did not vacate the house by February 15, 2021. On December 11, 2020, the district court entered an order formally denying defendants' motion for summary disposition. In the order, after summarizing the facts, the district court ruled:

> [Briggs], as land contract vendee on a valid contract, properly has standing to engage summary proceedings to evict persons from the premises. When Mr. Small entered into the rental agreement with the Defendants, he does not appear to have had the authority to enter into such an agreement without the assent of the [Briggs]. The term of that agreement has now expired. Defendants admitted that they did not take any efforts to determine the identity of the actual owner of the premises. At best, Defendants have a tenancy-at-will agreement with a now-deceased landlord who had no authority to enter such an agreement. [Briggs's] Complaint for Possession is properly filed against Defendants, and accordingly Defendants' Motion for Summary disposition is denied.

Defendants filed a claim of appeal in the circuit court but then voluntarily dismissed the appeal. On February 10 or 11, 2021, in the district court, defendants moved for relief from judgment, arguing that they were entitled to relief because of Briggs's fraud and misrepresentation. In support, defendants contended that the land contract that Briggs filed in the district court with his complaint for possession was not the same land contract that had been recorded with the register of deeds. Defendants also argued that relief from judgment was warranted because of mistake, inadvertence, surprise, or excusable neglect, MCR 2.612(C)(1)(a). They asserted that the district

---

[3] The judgment expressly indicated that no money judgment was being entered.

-4-

court had failed to swear-in Briggs as a witness at the earlier hearing; therefore, his statements and claims had not been made under oath. Defendants also maintained that the district court mistakenly believed that defendants' rental agreement was not recorded with the register of deeds, leading the court to erroneously conclude that defendants did not have an interest in the property. Defendants emphasized that they had recorded the rental agreement with their affidavit of an interest in land on September 21, 2020. Briggs filed an answer opposing the motion and challenging defendants' claims.

The record contains a brief in support of defendants' motion for relief from judgment which was signed by defense counsel on February 24, 2021. The brief added an argument that was not contained in the motion for relief from judgment. Defendants contended that an action for possession of property constitutes an action at law, that Briggs did not have legal title to the property, and that consequently he did "not have standing to seek a legal remedy for possession of the property." The district court register of actions does not show that the brief in support of the motion for relief from judgment was filed, but the brief itself was stamped by the district court with a filing date of March 9, 2021.

Defendants also filed a motion to determine an interest in land, along with a supporting brief. The motion and brief were signed by defense counsel on February 24, 2021. The district court register of actions does not show that the motion and brief were ever filed, but the documents themselves were stamped by the district court with a filing date of March 9, 2021. In the motion and brief to determine an interest in land, defendants argued that they had an interest in the property that was superior to any interest held by Briggs. Defendants repeated some of their arguments made in the motion for relief from judgment. Relevant for our purposes, defendants also maintained that Briggs had "abandoned the property in 2012 and by his actions abandoned the land contract." They attached a copy of this Court's opinion in *Day v Lacchia*, 175 Mich App 363; 437 NW2d 400 (1989), to support their position.

A hearing was held on defendants' motion for relief from judgment on March 8, 2021. Defense counsel argued the issues contained in defendants' motion for relief from judgment. The district court acknowledged that it had failed to swear-in Briggs as a witness at the previous hearing. It then placed Briggs under oath and asked him if the testimony that he gave at the last hearing was true to the best of his information, knowledge, and belief. Briggs answered in the affirmative. The district court next observed that there was no difference in "the substantive language" of the land contract that Briggs filed with his complaint for possession as compared to the land contract that Briggs recorded with the register of deeds. According to the district court, the only so-called difference between the two land contracts was that the contract filed with the possession complaint did not include the amortization schedule that had been attached to the land contract recorded with the register of deeds. Defendants acknowledged that the district court's assessment on that matter was accurate.

At the hearing, defense counsel also presented arguments that had been in the brief in support of the motion for relief from judgment and in the motion to determine an interest in land, along with the supporting brief, which documents were signed by counsel on February 24, 2021, but had not yet been filed with the district court. Defense counsel was under the belief that those documents had already been filed. Counsel proceeded to assert that Briggs's complaint for possession of the property was premature. Defendants maintained that our Supreme Court had

held that a land contract vendee's title is equitable and that courts will not recognize equitable title in an action at law, such as an action for possession. According to defendants, until Briggs obtained "perfected legal title" to the property, he could not bring an action for ejectment. Defendants also argued that under *Day*, 175 Mich App 363, a land contract vendor may retake possession of real property if the vendee is not in possession and has effectively abandoned the property. Defendants claimed that Small had the right to retake possession of the property in 2014 when the rental agreement was executed, where Briggs had not possessed the house since 2012 and had abandoned it. In support of their stance, defendants pointed out that Briggs had allowed the house to deteriorate such that it was "in terrible shape," that he had not paid taxes or maintained insurance on the home, and that Briggs had not made payments required by the land contract.

The district court expressed that it had reviewed defendants' motion for relief from judgment before the hearing and that some of defendants' oral arguments at the hearing, including abandonment under *Day*, were not contained in that motion. Briggs, who did not have counsel, offered his agreement with the court's observation. At this juncture in the hearing, there was a discussion between the district court and defense counsel, with the court indicating that it only had in its possession the motion for relief from judgment, and counsel voicing her belief that the supporting brief, the motion to determine an interest in land, and the brief associated with that particular motion had all been filed. The district court denied defendants' motion for relief from judgment with respect to the arguments contained in the motion, including the arguments concerning the purported different land contracts and the failure to swear-in Briggs as a witness. The district court, however, informed the parties that, subsequent to the hearing, it would review *Day* and consider the arguments regarding the alleged abandonment of the land contract and the purported necessity of legal title to have standing to pursue a possession judgment. The day after the hearing, on March 9, 2021, defendants filed the brief in support of the motion for relief from judgment, filed the motion to determine an interest in land, and filed the brief supporting the motion to determine an interest in land.

On March 15, 2021, the district court entered an order denying defendants' motion for relief from judgment. Consistent with its ruling from the bench, the district court rejected defendants' claim that Briggs had engaged in a misrepresentation by not attaching the amortization schedule to the land contract filed with his complaint for possession. The court explained that the absence of the amortization schedule was not material to the district court's determination that Briggs had a valid land contract that had not been forfeited. The district court also found that its failure to place Briggs under oath at the earlier hearing did not warrant relief. The court noted that no objection had been made by defendants at that previous hearing and that, regardless, Briggs subsequently affirmed under oath that his earlier "testimony" was truthful. Finally, the district court ruled that defendants' affidavit of interest in land did not persuade it that defendants had a superior claim to the property. The court observed that the affidavit of interest in land did not cure the deficiencies in the rental agreement, which were the lack of a notarized signature and the absence of a specified term for repayment. The district court did not address *Day*, the issue of land contract abandonment, or the argument that legal title was necessary to have standing to commence a complaint for possession.

In a March 22, 2021 order, the district court denied defendants' motion to determine an interest in land. The court denied the motion because defendants, in the motion, had essentially asserted a counterclaim of equitable title to the property but no counterclaim had ever been pleaded

-6-

by defendants. There was no express discussion or analysis of *Day*, the issue of land contract abandonment, or the argument that legal title was necessary to have standing to seek a possession judgment.

Defendants appealed to the circuit court, challenging the district court's various orders and reiterating, for the most part, their arguments that had been made in the district court. Oral argument was held on June 22, 2021. On June 29, 2021, the circuit court issued its written opinion and order affirming the district court's rulings. The circuit court first addressed defendants' argument that Briggs had abandoned the land contract and his equitable interest in the property. The court noted that although the extinguishment of a land contract vendee's equitable title is generally accomplished through formal court proceedings, Michigan courts have recognized that a vendee may lose his or her equitable title through abandonment. But, according to the circuit court, the record before the district court did not support the claim of abandonment. The circuit court explained:

> The record does establish that upon Defendants gaining access to the . . . residence, they found it to be in dire condition, however, the record also contains the testimony of Mr. Briggs, which was referenced by the District Court in its Order in response to Defendants' Motion for Summary Disposition. Mr. Briggs testified that he and Mr. Small entered into an understanding which permitted Mr. Small's son to reside at the . . . premises. Mr. Briggs went on to say that such arrangement caused him to opine that his obligations under the land contract were being satisfied and that he never heard anything to the contrary. The testimony of Mr. Briggs in that regard was not disputed.
>
> The District Court, obviously, did not find on the basis of the record before it that Mr. Briggs had abandoned his interest in the subject property. For that reason, the District Court in its Order Denying Defendants' Motion for Relief from Judgment found [Briggs] to have a valid land contract which "had not been forfeited . . .". Findings of fact by the trial court may not be set aside unless clearly erroneous and the failure of the District Court to find abandonment is supported by the record.

The circuit court then addressed defendants' argument that because Briggs only had equitable title to the property, he could not avail himself of relief under the SPA. The circuit court indicated that defendants were essentially arguing that the district court did not have jurisdiction to hear and decide the complaint for possession filed by Briggs. The circuit court disagreed, stating that when the jurisdiction of the district courts was broadened in 1980, district courts received authority to hear and determine equitable claims involving rights and interests in land. Finally, the circuit court rejected defendants' argument that the district court had erred in finding that the affidavit of interest in land that they had executed was not a recordable document. The circuit court agreed with the district court that the issue was of no consequence.

Defendants appeal by leave granted. *Briggs v Mason*, unpublished order of the Court of Appeals, entered January 18, 2022 (Docket No. 357863).

## II. ANALYSIS

### A. APPELLATE ARGUMENTS

On appeal, defendants effectively argue that the lower courts erred (1) by not recognizing under *Day* that Briggs had abandoned the land contract and his equitable title, (2) by concluding that Briggs had standing to commence the action for possession despite the uncontroverted fact that he did not have legal title to the property, and (3) by failing to find that defendants held an equitable interest in the property and a right of possession in light of the rental agreement and the recorded affidavit of an interest in land.

### B. STANDARDS OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "De novo review means that we review the legal issue independently, without required deference to the courts below." *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019). This Court reviews for an abuse of discretion a trial court's decision on a motion for relief from judgment. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 404; 651 NW2d 756 (2002). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Macomb Co Dep't of Human Servs v Anderson*, 304 Mich App 750, 754; 849 NW2d 408 (2014). "Findings of fact by the trial court may not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C). "The clear-error standard requires us to give deference to the lower court and find clear error only if we are nevertheless left with the definite and firm conviction that a mistake has been made." *Arbor Farms, LLC v Geostar Corp*, 305 Mich App 374, 386-387; 853 NW2d 421 (2014) (quotation marks and citation omitted).

### C. DISCUSSION AND RESOLUTION

Our Supreme Court "has consistently held that under a land contract, although the vendor retains legal title until the contractual obligations have been fulfilled, the vendee is given equitable title, and that equitable title is a present interest in realty that may be sold, devised, or encumbered." *Graves v American Acceptance Mtg Corp (On Rehearing)*, 469 Mich 608, 614; 677 NW2d 829 (2004). "That the vendee may ultimately default on the [land] contract does not negate the fact that the vendee has, in a real sense, purchased the relevant property." *Id.* at 616. This is true even though legal title remains in the vendor until the vendee fully performs all of his or her contractual obligations. *Id.* Assuming authorization under the land contract, the vendee obtains a right to possess the real property. *Jones v Bowling*, 117 Mich 288, 292; 75 NW 611 (1898).

A landlord-tenant "lease is a conveyance by the owner of an estate to another of a portion of his interest therein for a term less than his own for a valuable consideration, granting thereby to the lessee the possession, use and enjoyment of the portion conveyed during the period stipulated." *Minnis v Newbro-Gallogly Co*, 174 Mich 635, 639; 140 NW 980 (1913) (quotation marks and citation omitted); see also *Royal Oak Wholesale Co v Ford*, 1 Mich App 463, 466; 136 NW2d 765

(1965); 2 Cameron, *Michigan Real Property Law* (3d ed), § 20.2, p 1096. "A lease . . . is ordinarily considered to create an estate in lands." Cameron, § 20.1, p 1093.

To be clear, this case has no bearing on who holds legal title to the property, which at this stage appears to be Small's estate, an heir or heirs of the estate, or possibly a grantee under a conveyance by the estate or an heir or heirs. On remand, it may be wise for the parties or the district court to contemplate joinder of the current legal titleholder. See MCR 2.205 and MCR 2.206.[4]

We initially conclude that defendants, having resided in the house as tenants for several years, plainly have some type of leasehold or possessory interest in the property regardless of any recordation issues. See Cameron, §§ 20.2 to 20.7, pp 1096-1098 (discussing the different types of tenancies recognized in Michigan, including, for example, a tenancy at will, which "may be created when a person takes possession of land under an invalid contract or lease").[5] But if Briggs's recorded land contract and equitable title were not abandoned or otherwise forfeited, Briggs's interest as a land contract vendee would constitute a superior interest in the property. We reach this conclusion, assuming no abandonment, because Briggs's vendee interest in the land contract was created three years before the rental agreement was executed, and Small did not have the legal right or authority to unilaterally lease the property in conflict with Briggs's equitable title and possessory right. In that circumstance, defendants' leasehold or possessory interest would have to yield or succumb to Briggs's equitable title, leaving defendants to seek recourse, if any, against Small or his estate.[6] Defendants do not argue to the contrary.

With respect to whether Briggs had standing or authority to commence the action for possession under the SPA even though he only had equitable title and not legal title to the property, we hold that Briggs was a proper plaintiff in the SPA action, assuming that he did not abandon the land contract. Defendants rely on outdated legal principles that recognized distinctions between actions at law and in equity that for the most part have now been abolished. See Const 1963, art 6, § 5 ("The distinctions between law and equity proceedings shall, as far as practicable, be abolished."). This Court has stated that "[w]ith the adoption of the General Court Rules of 1963, our Supreme Court eliminated the separate character of actions at law and actions in equity and established one form of action, which practice continues to this day." *New Prod Corp v Harbor Shores BHBT Land Dev, LLC*, 308 Mich App 638, 644-645; 866 NW2d 850 (2014).

Moreover, the SPA makes clear that a land contract vendee may institute an action for the possession of premises. "The district court . . . ha[s] jurisdiction over summary proceedings to recover possession of premises under this chapter." MCL 600.5704. And MCL 600.5714(1)

---

[4] We have not been informed of any litigation filed by the legal titleholder concerning the property.

[5] See Cameron, § 20.3, p 1096.

[6] We recognize that the rental agreement between Small and defendants also contained an agreement to sell the property to defendants, which was not exercised. But this additional component of the rental agreement did not give defendants an interest that was superior to the land contract vendee interest.

provides that "[a] person entitled to possession of premises may recover possession by summary proceedings . . . ." As indicated earlier, a land contract vendee is entitled to possession of the premises unless the pertinent land contract, for whatever unusual reason, does not allow for possession, which was not the case in this instance. Indeed, even a leaseholder or tenant who has a legal right to possession under a rental agreement can bring a suit under the SPA to, for example, eject a landlord who holds legal title and who has unlawfully locked out the tenant. Additionally, MCL 600.8302(3) provides that in an action under the SPA, "the district court may hear and determine an *equitable* claim . . . involving a right, interest, obligation, or title in land." (Emphasis added.) Accordingly, we reject defendants' contention that Briggs could not pursue a possession judgment because he was not the legal titleholder.

This leave us with the issue of abandonment of the land contract and Briggs's equitable title. MCL 600.5726 provides:

> A person entitled to any premises may recover possession thereof by a proceeding under this chapter after forfeiture of an executory contract for the purchase of the premises but only if the terms of the contract expressly provide for termination or forfeiture, or give the vendor the right to declare a forfeiture, in consequence of the nonpayment of any moneys required to be paid under the contract or any other material breach of the contract. . . . .

MCR 4.202 provides the procedural rules governing a land contract forfeiture action under the SPA. In this case, there is no dispute that Briggs was never the subject of an action to forfeit the land contract.[7]

MCL 600.5750 provides that "[t]he remedy provided by summary proceedings is in addition to, and not exclusive of, other remedies, either legal, equitable or statutory." Land contract vendors need not necessarily resort to the SPA in all circumstances, and self-help remains available in certain circumstances, including when the retaking of vacant property can be accomplished peaceably. *Day*, 175 Mich App at 374. In *Dundas v Foster*, 281 Mich 117, 120; 274 NW 731 (1937), our Supreme Court addressed the issue of abandonment of a land contract:

> Abandonment by the purchaser is shown where he positively and absolutely refuses to perform the conditions of the contract, such as a failure to make payments due, accompanied by other circumstances, or where by his conduct he clearly shows an intention to abandon the contract. As a general rule whether or not the purchaser's acts and conduct amount to an abandonment of the contract is a question for the jury; but such acts and conduct may be so decisive and unambiguous as to justify the court in deciding the question as a matter of law. [Quotation marks, citation, and ellipses omitted; see also *Houghton v Collins*, 344 Mich 175, 180; 73 NW2d 208 (1955).]

---

[7] Vendee defaults on land contracts can also be entertained by the circuit court in an action for *foreclosure*. MCL 600.3101. No foreclosure suit was filed in this case.

Conduct of the vendor and vendee that is inconsistent with the continuance of a land contract demonstrates rescission of the contract by abandonment, and it is unnecessary to present evidence of a writing showing relinquishment of the land contract because abandonment may be deduced solely from the surrounding circumstances or a course of conduct. *Annett v Stout*, 322 Mich 457, 462; 34 NW2d 42 (1948). Accordingly, even when there has been no land contract forfeiture action, a land contract can be abandoned. But if a land contract is abandoned, the vendee would lose the interest necessary to commence a suit for possession under the SPA.

In this case, defendants did not specifically argue "abandonment" of the land contract at the time of the hearing on Briggs's complaint for possession and defendants' motion for summary disposition. But Mason's testimony squarely gave rise to that issue where she indicated that the house was in "total disarray," that it appeared abandoned, that she was told that the house had been vacant for two years, that she was informed that Briggs had "just up and disappeared," and that she heard that Briggs's son could not locate his father. Briggs's own testimony established that he essentially had nothing to do with the house from 2012 to 2018. And even though he had an agreement with Small to permit Small's son to reside in the house, which effectively allowed Briggs to forgo the payment of land contract installments, taxes, and insurance, the balloon payment was due in 2017, and apparently Briggs did nothing at that time.[8] In closing arguments at the possession and summary disposition hearing, defense counsel did argue that the circumstances indicated that Small had intended to lease and then sell the house to defendants and "that [Small] believed that the land contract had been defaulted . . . ."

Moreover, at the hearing on defendants' motion for relief from judgment, the district court informed defendants that it would take into consideration *Day* and the issue of abandonment, but the rulings by the district court on the motions for relief from judgment and to determine an interest in land do not reveal any examination of the issue of abandonment outside of an actual forfeiture action. The district court's ruling that defendants needed to file a counterclaim did not pertain to abandonment, and the abandonment argument could certainly serve as a defense with no need to file a counterclaim to raise the issue. As the circuit court noted, the district court observed that Small had never instituted legal proceedings to have the land contract forfeited. That observation does not appear to be a ruling on abandonment, and if it were so intended, it would be in error because a land contract can be deemed abandoned regardless of whether a land contract forfeiture action was instituted.

Although there was the semblance of an evidentiary hearing in the district court, we believe that a trial is appropriate to fully develop and squarely address the issue of abandonment that does not appear to have actually been decided by the district court. For purposes of remand and to avoid any confusion, the issue of abandonment of the land contract need not be judged solely at the time defendants entered into the rental agreement in 2014; rather, if Briggs abandoned the land contract

---

[8] The circuit court did not contemplate this aspect of the case when determining that the district court did not err in finding that there was no abandonment, thereby undermining the circuit court's ruling that we cannot affirm. Additionally, the district court did not even expressly address the issue of abandonment.

and thus his equitable title at any point before commencing the action for possession under the SPA, he would lack standing to obtain a possession judgment.

We reverse and remand for further proceedings in the district court consistent with this opinion. We do not retain jurisdiction. We decline to tax costs under MCR 7.219.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ James Robert Redford